**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KONG L.,

Petitioner,

v.

DAVID EASTERWOOD, *Director of St. Paul Enforcement and Removal Operations, Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*; DAVE ISAIS, *Jail Commander of the Sherburne County Jail*; TODD BLANCHE, *Attorney General of the United States*; and DAVID J. VENTURELLA, *Acting Director, U.S. Immigration and Customs Enforcement*,

Respondents.

Case No. 26-cv-3669 (LMP/LIB)

**ORDER DENYING HABEAS PETITION**

---

Hannah Brown, **HB Law & Advocacy PLLC, Wayzata, MN**, and Stacey Rogers, **SRR Law Group LLC, St Cloud, MN**, for Petitioner.

Carl H. Berry, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

Petitioner Kong L.[2] was ordered removed from the United States in 2005. But because Laos refused to accept Kong, he was released into the community on an Order of

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Dave Isais, Jail Commander at the Sherburne County Jail, has not participated in these proceedings.

[2] The Court uses Petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

Supervision ("OSUP"). The Government has now revoked Kong's OSUP and detained him in immigration custody because Laos has agreed to accept him. Kong maintains that his continued detention is unlawful. The Court disagrees and denies his petition.

**BACKGROUND**

Kong is a citizen of Laos who entered the United States as a refugee in 1989. ECF No. 8 ¶ 5. He became a lawful permanent resident in 1989, *id.* ¶ 6, but after a burglary conviction, Kong was ordered removed to Laos in May 2005, *id.* ¶¶ 7–9. On May 17, 2005, Immigration and Custom Enforcement ("ICE") issued an I-205 administrative warrant for Kong's arrest, and he was taken into custody. *Id.* ¶ 10; ECF No. 8-4. But Kong's removal to Laos did not occur, likely because Laos historically did not accept the return of its nationals ordered removed from the United States. *See* ECF No. 1 ¶ 36. Accordingly, on August 18, 2005, the Government released Kong on an OSUP. ECF No. 8-5. As part of his OSUP conditions, Kong was required to remain law-abiding, assist the Government in obtaining travel documents, and report for in-person check-ins. *Id.* at 1.

Kong has routinely appeared at his check-ins and has remained law-abiding, except for an accomplice to burglary conviction in 2006. ECF No. 1 ¶ 32; ECF No. 8-1 at 2. But on June 18, 2026, the Government secured a travel document for Kong from Laos. ECF No. 8 ¶ 13. As a result, when Kong appeared at a regularly scheduled check-in on August 18, 2026, the Government took him into custody. *Id.* ¶ 14; ECF No. 1 ¶ 42. Prior to arresting him, ICE created several documents. First, at 9:40 a.m., it created a new I-205 warrant of removal because Kong's 2005 I-205 warrant was "located in other field office." ECF No. 8 ¶ 15; ECF No. 8-7 at 1. Next, at 9:42 a.m., ICE issued a Notice of Revocation

of Release, which documents that ICE had secured a travel document for Kong and that his removal is scheduled to occur "no later than September 16, 2026." ECF No. 8 ¶ 16; ECF No. 8-6 at 1. At 9:45 a.m., ICE arrested Kong. ECF No. 8 ¶ 18. At 9:46 a.m., ICE served Kong with the Notice of Revocation, *id.* ¶ 19, and ICE provided Kong with an informal interview to contest the revocation decision. *Id.* ¶ 17; ECF No. 8-6.[3] Kong provided a short written statement explaining that he believed he would never be removed and expressing a fear of removal. ECF No. 8-6. Kong remains detained at the Sherburne County Jail. ECF No. 1 ¶ 21.

On August 18, 2026, Kong filed a petition for a writ of habeas corpus, alleging that his detention is unlawful. ECF No. 1. Kong's petition brings four related claims: (1) that he was arrested without a valid warrant and contrary to federal statutes governing warrantless arrests, *see id.* ¶¶ 108–12; (2) that the Government unlawfully revoked his OSUP, *see id.* ¶¶ 113–17; (3) that his current detention violates Due Process because he had no "meaningful advance notice, an adequate opportunity to contest the basis for revocation, or a neutral determination that physical confinement was presently necessary," *id.* ¶¶ 118–22; and (4) that the Government violated the Administrative Procedure Act by not following its OSUP revocation procedures, *id.* ¶¶ 123–27.

[3] Kong does not contest, and indeed accepts as true, the precise timeline of events. ECF No. 9 at 3.

The Court ordered the Government to respond to Kong's petition no later than August 26, 2026, with any reply from Kong due by September 2, 2026. ECF No. 6. Both the Government and Kong timely provided that briefing. ECF Nos. 7, 9.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

### I. Warrantless Arrest Claim

Kong alleges that he was arrested without a valid warrant. ECF No. 1 ¶ 108–12. The Court disagrees. "As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to "exercise discretion to issue a warrant for a [noncitizen]'s arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.* at 408, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest," 8 U.S.C. § 1357(a)(2).

The Government provided the Court not one but two warrants for Kong's arrest: both a 2005 and 2026 I-205 warrant of removal. ECF Nos. 8-4, 8-7. But in arguing that Kong's arrest was valid, the Government points only to the 2005 warrant. ECF No. 7 at 11–14. This is likely because, as Kong points out, the 2026 warrant was issued by an ICE officer that may not be authorized to issue I-205 warrants. ECF No. 9 at 12–13. And where an I-205 warrant was not issued by authorized personnel, it is not valid. *Ger V. v. Mullin*, No. 26-cv-2543 (KMM/DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026) (holding that the I-205 "was not validly issued because it was not issued by the right person").

Kong argues that the I-205 warrant can no longer justify his detention because it is too old. But the Court has held otherwise. *Pao M. v. Blanche*, No. 26-cv-3399 (LMP/DJF), 2026 WL 2454331, at *2–3 (D. Minn. Aug. 21, 2026). There, the Court explained that an unexecuted I-205 warrant remains valid and justifies future arrests until the noncitizen's removal is effectuated. *Id.* The same is true here. Because the Government had a valid warrant for his arrest, Kong's arrest was lawful. *Id.*[4]

[4] Kong contends that his argument is consistent "with the current District of Minnesota authority." ECF No. 9 at 15. In support, he points to *Ahmed S. v. Blanche*, No. 26-cv-2265 (KMM/DLM), 2026 WL 1998718, at *5 (D. Minn. July 10, 2026); *Ger V. v. Mullin*, No. 26-cv-2543 (KMM/DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026); and *Manuel P. v. Blanche*, No. 26-cv-3445 (JMB/EMB), 2026 WL 2281048 (D. Minn. Aug. 7, 2026), *see* ECF No. 9 at 14–15, all of which adopted a similar argument. But two of those cases, *Ger V.* and *Ahmed S.*, were decided by District Judge Kate M. Menendez, who has since reconsidered the issue and determined that an unexecuted I-205 warrant does not expire simply through the passage of time. *See Ansumana S. v. Blanche*, No. 26-cv-3371 (KMM/DJF), 2026 WL 2606655, at *8 (D. Minn. Sept. 3, 2026) (noting that "this Court agrees with the analysis in *Pao M.* and concludes that its own statements to the contrary in *Ger V.* and *Ahmed S.* were incorrect"). And for the reasons explained in

Kong alternatively contends that the fact that ICE issued the 2026 I-205 warrant supports his position that the 2005 I-205 warrant was no longer effective. ECF No. 9 at 15 ("ICE thus acted on the premise that a new warrant was needed for this new custody event. Respondents cannot generate a new warrant for the arrest, discover that the new warrant suffers a regulatory defect, and then retrospectively characterize a 2005 instrument as the actual arrest authority when their own operational record says otherwise."). The Court appreciates the point but does not find it persuasive. Kong points to no case law suggesting that because ICE issued a second warrant, albeit an ineffective one, the first warrant is no longer effective. A valid warrant existed for his arrest. ICE's unnecessary attempt to get a second one does not change that.

## II. Unlawful Revocation of Kong's OSUP

Kong's remaining three claims all relate to the way ICE revoked his OSUP. Specifically, Kong argues that ICE did not follow its own regulations in revoking his OSUP and that ICE's failure to follow its regulations resulted in a violation of his due process rights. ECF No. 9 at 4. The Court, again, disagrees.

The parties agree that 8 U.S.C. § 1231 and its implementing regulations govern Kong's detention because he is subject to a final order of removal. *See* ECF No. 1 ¶ 52; ECF No. 7 at 1. The core dispute, then, is whether ICE followed those regulations in revoking the OSUP and detaining Kong. *See Saengnakhone S. v. Noem*, No. 25-cv-4775

---

*Pao M.*, 2026 WL 2454331, at *2–3, the Court respectfully disagrees with the conclusion reached in *Manuel P.*

(ECT/LIB), 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)) ("Agencies must follow their own regulations.").

Federal regulations require ICE to release a noncitizen ordered removed from the United States on an OSUP if there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized" by statute.). Once ICE releases a noncitizen on an OSUP, ICE's ability to re-detain that noncitizen is constrained by its own regulations. In fact, there are only two circumstances in which an OSUP may be revoked and the noncitizen may be re-detained: (1) if the noncitizen violates the OSUP's conditions; or (2) if circumstances change such that ICE determines the noncitizen's removal is significantly likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1)–(2).

In either case—an OSUP violation or changed circumstances—ICE must notify the noncitizen upon revocation of the "reasons for revocation of his or her release" and "conduct an initial informal interview promptly after [the noncitizen]'s return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). As part of that informal interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated" the OSUP's conditions. *Id.*

The record reflects that the Government complied with this governing framework. First, the "changed circumstance" here is the Government's receipt of a travel document for Kong from Laos, *see* ECF No. 8 ¶ 13, which makes Kong's removal "significantly likely in the reasonably foreseeable future," *see Chay T. v. Mullin*, No. 26-cv-2908 (LMP/ECW), 2026 WL 1870619, at *2 (D. Minn. June 30, 2026). Second, Kong "received notice" of the revocation of his OSUP "the same date as his arrest," which is appropriate under 8 C.F.R. § 241.13(i)(3). *Somvang P. v. Sec'y, Dep't of Homeland Sec.*, No. 26-cv-0037 (PJS/EMB), 2026 WL 788853, at *2 (D. Minn. Mar. 20, 2026); *see* ECF No. 8 ¶ 16. And third, ICE provided Kong with the required informal interview later that day, during which Kong provided a written statement. ECF No. 8-6. That is enough for ICE to meet Section 241.13(i)'s requirements.

Kong insists, however, that more was required. He argues that ICE must (1) consider the factors identified in Section 241.13(f), and (2) provide sufficient notice to him that ICE has considered those factors. *See* ECF No. 9 at 5–9. But even if that's true, the record here demonstrates that ICE complied with Section 241.13(f). Section 241.13(f) requires the Government to consider certain factors when determining whether there is a likelihood of removal, including

> the history of the [noncitizens]'s efforts to comply with the order of removal, the history of [ICE]'s efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE]'s efforts to remove this [noncitizen] and the [noncitizen]'s assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f). Here, ICE determined (and notified Kong of its determination), that changed circumstances demonstrated a likelihood of removal because (1) it had secured a travel document for Kong and (2) his removal was scheduled to occur no later than September 16, 2026. ECF No. 8 ¶ 16; ECF No. 8-6 at 1. This suffices to show that Kong's removal is significantly likely in the reasonably foreseeable future. *See Sao V. v. Mullin*, No. 26-cv-2520 (ECT/JFD), 2026 WL 1678692, at *2 (D. Minn. June 10, 2026) ("ICE's possession of the petitioner's travel documents at the time of revocation would ordinarily do the trick."); *see also Moussa S. v. Bondi*, No. 26-cv-1408 (PJS/ECW), 2026 WL 622680, at *1 (D. Minn. Mar. 5, 2026).

Kong argues that, even so, ICE did not sufficiently explain itself. *See* ECF No. 9 at 5–6 (faulting the notice provided because there "is no decision memorandum, no § 241.13(f) analysis, no State Department assessment, no explanation of the twenty-one-year removal history, no evidence identifying the nature of the supposed travel document, and no contemporaneous finding explaining why this particular document made Petitioner's removal significantly likely rather than merely possible"). But that is simply substituting Kong's preferred explanation with the adequate one he was provided. ICE informed Kong that it determined that his removal was likely because it had a travel document and a removal date—no later than September 16, 2026. *See* ECF No. 8 ¶ 16; ECF No. 8-6 at 1. In so doing, ICE connected the dots between its determination and its reasons. *Zang X., v. Blanche*, No. 26-cv-3870 (KMM/EMB), 2026 WL 2690221, at *3 (D. Minn. Sept. 14, 2026) (rejecting the same argument because "the notice of revocation

specifically explains that ICE had not only obtained a travel document for [petitioner], but also 'scheduled [his] removal to take place' within the next few weeks").

Finally, as to Kong's due process argument, ICE promulgated 8 C.F.R. § 241.13(i)(3) "to provide noncitizens with the fundamental due process protections that courts have found to be constitutionally required." *Pedro O. v. Noem*, No. 26-cv-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026) (citation modified), *report and recommendation adopted*, 2026 WL 615415 (D. Minn. Mar. 4, 2026). And, notably, Kong has a path forward to contest ICE's determination. *See* 8 C.F.R. § 241.4(a)(3); *see also id.* §§ 241.13(a), (i)(3) (explaining that noncitizens who have their OSUP revoked under 8 C.F.R. § 241.13(i)(3) receive the "custody review" process provided in 8 C.F.R. § 241.4); *Emilio S. R. G. v. Mullin*, No. 26-cv-2189 (KMM/DLM), 2026 WL 1810416, at *2 (D. Minn. June 24, 2026) (noting that "the regulatory scheme contemplates an immediate opportunity to contest revocation at the outset of the detention and a more fulsome opportunity at a later time"). "Given that additional process, the Court disagrees that" ICE's re-detention "somehow violated [Kong's] due process rights." *Abraham M. v. Mullin*, No. 26-cv-2609 (LMP/DJF), 2026 WL 1864079, at *4 (D. Minn. June 29, 2026); *see also Emilio S. R. G.*, 2026 WL 1810416, at *2 (rejecting a similar argument).

## CONCLUSION

For these reasons, and based on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Kong L.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**; and

2. This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 21, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge